# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| ORTHOACCEL TECHNOLOGIES, INC. | § § § | |
| v. | § § § | CASE NO. 4:16-CV-350 |
| | | Judge Mazzant |
| PROPEL ORTHODONTICS, LLC, and PROPEL ORTHODONTICS USA, LLC | § § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is OrthoAccel Technologies, Inc.'s Motion for Expedited Discovery (Dkt. #9). After considering the relevant pleadings, the Court finds that the motion should be denied.

## BACKGROUND

Plaintiff OrthoAccel Technologies, Inc. ("Plaintiff") maintains that it "designed, created, tested, and produced an accelerated vibratory orthodontic device that speeds orthodontic treatment and decreases patient discomfort during treatment (the "AcceleDent")." (Dkt. #9 at ¶ 2). Plaintiff received regulatory clearance to market AcceleDent (Dkt. #9 at ¶ 2). Plaintiff alleges that Defendant Propel Orthodontics, LLC, and Defendant Propel Orthodontics USA, LLC (collectively, "Defendants"), "have now undertaken an organized campaign to penetrate the accelerated orthodontic marketplace with false and misleading promotions for a competing product (the 'VibraPro5' or 'VPro5')." (Dkt. #9 at ¶ 2). Plaintiff maintains that "[t]hrough its marketing program, sales team, YouTube videos, sponsored study clubs, and the website of related Propel entities, Defendants have disseminated false and materially misleading information to doctors and patients." (Dkt. #9 at ¶ 2).

According to Plaintiff, "AcceleDent has two main functional components: (1) a 'Mouthpiece' and (2) an 'Activator.'" (Dkt. #9 at ¶ 4). "The Activator is a small extraoral component that generates a vibrational force of about 30 Hz. The Activator connects directly to the Mouthpiece; while the patient lightly bites down, vibration transmits through the Mouthpiece and ultimately through the teeth." (Dkt. #9 at ¶ 4). Plaintiff states that "[t]he design is simple and can be used by patients at home." (Dkt. #9 at ¶ 4).

Plaintiff alleges that "in January 2016, [Defendants] began marketing the VPro5 device to doctors within the United States and launched sales in March 2016. The VPro5 is very similar in design to AcceleDent and includes an Activator, which Defendants call an 'Oscillator,' and a mouthpiece." (Dkt. #9 at ¶ 4). Plaintiff states that "[l]ike AcceleDent, patients are instructed to gently bite the mouthpiece while activating the Oscillator's vibrational force. Defendants claim that the VPro5 delivers 120 Hz vibration and that all clinical benefits can be achieved with use for only five minutes each day." (Dkt. #9 at ¶ 4).

According to Plaintiff, "Defendants are currently advertising and promoting the VPro5 primarily and largely through their centrally managed sales force, which has been assigned to various regions across the country. Defendant's sales team has been emailing and meeting directly with doctors across the country promoting the VPro5." (Dkt. #9 at ¶ 5). Plaintiff alleges that "Defendants have mobilized their centrally managed sales force to falsely and deceptively promote VPro5." (Dkt. #9 at ¶ 5). Plainiff further alleges that "[u]pon information and belief, Defendants' sales team has told doctors that the VPro5 is an FDA registered and/or FDA cleared medical device. However, according to all available information, including the publically available FDA Device Registration and Device Listing, the VPro5 is not registered or cleared." (Dkt. #9 at ¶ 5).

Defendants state that

> [h]ad [Plaintiff] conducted a proper Rule 11 investigation, or even waited to file its motion . . . [Plaintiff] would have learned that its allegations are without merit, and that the VPro5 is an FDA registered Class I medical device that uses vibration to seat clear aligners (but not braces)

(Dkt. #11 at p. 1). Defendants maintain that they have systems in place to comply with all FDA requirements (Dkt. #11 at p. 8). Defendants state that "[o]n May 19, 2016, [Defendants] electronically submitted all registration and listing information . . . and [Defendants'] device listing provided the FDA with its proprietary name." (Dkt. #11 at p. 4). Defendants explain that "[p]ursuant to an option provided by FDA's registration and listing database, [Defendants] did not opt for the name to be shown publicly." (Dkt. #11 at p. 4). Defendants also state that "[o]n June 23, 2016, [Defendants] updated [the] device listing for the VPro5 to publicly reflect the proprietary name." (Dkt. #11 at p. 4).

Plaintiff argues that "Defendants promote several specific benefits of the VPro5 and claim that the promoted benefits are available for half or a third of the cost of AcceleDent." (Dkt. #9 at ¶ 6). According to the Plaintiff, "[t]hese claims include promotion of VPro5 for (a) accelerating tooth movement; (b) stimulating bone growth and tooth remodeling; (c) fast tracking retention; (d) relieving orthodontic pain; and (e) working more quickly and effectively than AcceleDent." (Dkt. #9 at ¶ 6). Plaintiff argues that "none of these purported benefits is supported by any reliable scientific evidence and are therefore, *per se* false. Defendants' sales representatives point to these unsubstantiated benefits to draw direct comparisons between VPro5 and AcceleDent, thus misleading consumers." (Dkt. #9 ¶ 6). Plaintiff alleges that "Defendants' unfair competition and false advertising has harmed [Plaintiff] substantially." (Dkt. # 9 at ¶ 7).

Defendants argue that Plaintiff has unclean hands and should be precluded from obtaining injunctive relief (Dkt. #11 at p. 15). Defendants assert that "[Plaintiff] has also been falsely telling prospective customers that [Defendants'] VPro5 is not registered by the FDA, and making misleading claims regarding alleged differences between classes of FDA registrations." (Dkt. #11 at p. 15). Defendants go on to state that "[m]ost egregiously, OrthoAccel has used its false Complaint to dissuade doctors from purchasing the VPro5." (Dkt. #11 at p. 15).

On May 20, 2016, Plaintiff filed its Application for Preliminary and Permanent Injunction (Dkt. #8). Also on May 20, 2016, Plaintiff filed its Motion for Expedited Discovery (the "Motion") (Dkt. #9). On May 27, 2016, Defendants filed their response to the Motion (Dkt. #11). On May 30, 2016, Plaintiff filed its reply to the Motion (Dkt. #16). On July 5, 2016, Defendants filed their sur-reply to the Motion (Dkt. #25).

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)" unless the Court orders otherwise. *See also Combat Zone Corp. v. John/Jane Does 1-2*, No. 2:12-cv-00509, 2012 WL 6684711, at *1 (E.D. Tex. Dec. 21, 2012). "An increasing majority of district courts, including several in the Fifth Circuit, have adopted a 'good cause' standard to determine whether to permit such expedited discovery." *Id*. (collecting cases). "In a 'good cause' analysis, a court must examine the discovery request 'on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." *St. Louis Group, Inc. v. Metals and Additives Corp., Inc.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011) (citation omitted). The burden of showing good cause rests on the party seeking the expedited discovery. *Id*. at 240. "Moreover,

the subject matter related to requests for expedited discovery should be narrowly tailored in scope." *Id.*

## ANALYSIS

Plaintiff requests documents on the following topics:

(1) Correspondence to or from the Food and Drug Administration ("FDA") concerning the VPro5;
(2) Documents evidencing the VPro5 sales or marketing plan;
(3) Communications to or from doctors or staff associated with doctors concerning the VPro5;
(4) Call notes or other forms or sales reports taken during or after a sales representative interacts with doctors or staff associated with doctors concerning the VPro5;
(5) Documents concerning VPro5 associated with Defendants' conference calls and other communications with sales representatives for the VPro5;
(6) Documents and communications concerning Propel's participation and presentation of VPro5 at the spring 2016 American Association of Orthodontics ("AAO") conference;
(7) Communications with Propel's manufacturer(s) for the VPro5 relating to the manufacture of the VPro5;
(8) Invoices for sales and presales of the VPro5;
(9) Documents evidencing or relating to clinical or scientific studies previously conducted, presently underway, or proposed for the future concerning the VPro5; and
(10) Communications relating to study clubs organized or sponsored by Propel concerning accelerated vibratory orthodontics or the VPro5.

(Dkt. #9 at ¶ 22). According to Plaintiff, "the document requests cover the time period from July 2015 through the present." (Dkt. #9 at ¶ 22). Plaintiff asks that the documents be produced within ten business days of the Court's order (Dkt. #9 at ¶ 22).

Plaintiff is also seeking "to take the depositions of a 30(b)(6) corporate representative, Jerry Zilles, and Judy Bordainack." (Dkt. #9 at ¶ 23). Plaintiff requests that it be allowed to depose the three individuals about the following topics:

(1) Documents produced by Defendants;
(2) Defendants' creation and manufacture of the VPro5 device;
(3) Defendants' marketing and promotion for the VPro5;
(4) Regulatory status and efforts made toward regulatory status for the VPro5; and

(5) Sales for the VPro5.

(Dkt. # 9 at ¶ 23). "[Plaintiff] requests that the Court order deponents to appear and provide oral deposition testimony on no more than ten (10) days business notice at a location agreed upon by the parties." (Dkt. #9 at ¶ 23). However, as discussed above, Plaintiff has the burden of demonstrating that good cause exists to expedite discovery.[1]

There are five factors that courts often consider when determining if good cause exists: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Greenthal v. Joyce*, 4:16-CV-41, 2016 WL 362312, at *2 (S.D. Tex. Jan. 29, 2016).

The Court will analyze each factor to determine if Plaintiff has met its burden of demonstrating good cause for expedited discovery. Since there is a preliminary injunction application pending, Plaintiff maintains that the first factor weighs in favor of allowing expedited discovery.[2] Defendants argue that since Plaintiff's request for a preliminary injunction is likely to fail, the first factor does not support a request for preliminary injunction (Dkt. # 11 at p. 9). The Court finds that arguments concerning the merits of the underlying injunction application are more relevant to "preliminary injunction-style analysis" than to the "good cause" analysis that the Court applying in the current case. *See St. Louis Grp., Inc.*, 275 F.R.D. at 239 (explaining that injunction-style analysis weighs several factors, including whether or not there is "some probability of success on the merits[,]" but stating that injunction-style analysis has

---

[1] As a preliminary matter, Defendants make several arguments related to the fact that Defendants believe that Plaintiff's complaint should be dismissed (Dkt. #25 at p. 2). Defendants "respectfully [request] that the Court defer any consideration of expedited merits discovery until it resolves the issues raised by [Defendants] motion to dismiss." (Dkt. #25 at p. 2). The Court will consider the Defendants' Motion to Dismiss in due course, and the Court will not address the arguments that the parties raise related to the Motion to Dismiss at this time. As a general matter, the Court will not stay discovery because there is a pending motion to dismiss.

[2] As mentioned above, on May 24, 2016, Plaintiff filed its Complaint requesting a preliminary injunction (Dkt. #1) and on June 20, 2016, it filed a separate application for injunction with a request for hearing (Dkt. #8).

become the minority approach as an increasing majority of courts have adopted a good cause standard of analysis). Therefore, the Court finds that the first factor weighs in favor of granting Plaintiff's request for expedited discovery.

The second factor concerns the breadth of the request and the fourth factor concerns the burden on Defendants to comply with the request. Plaintiff maintains that its discovery request is narrow (Dkt. #16 at p. 3). However, Defendants point out that Plaintiff's request is actually quite expansive and argues that it is unduly burdensome (Dkt. #11 at p. 9). *See* Dkt. #25 at p. 2 (stating that "[Plaintiff] literally requests virtually every document related to the VPro5™, including all documents relating to sales, manufacturing, marketing, communications, regulation, etc."). Defendants argue that "[t]he discovery requested under ten broad, sweeping categories that cover a year-long period would require [Defendants] to speak with and search the records of an overwhelming majority of their employees and independent sales representatives." (Dkt. #11 at p. 9).

Although Plaintiff requests documents produced within a time frame of about a year, this does not alter the fact that the request remains broad. The Court agrees that Plaintiff's discovery requests "broadly seek any and all information necessary for Plaintiffs to establish their cause of action which is manifestly improper." (Dkt. #11 at p. 14) (citation omitted). *See Bug Juice Brands, Inc. v. Great Lakes Bottling Co.*, No. 1:10-CV-229, 2010 WL 1418032, at *2 (W.D. Mich. Apr. 6, 2010) (finding that the plaintiff's ten document requests were overbroad because they sought information necessary for the plaintiffs to establish their cause of action); *Better Packages, Inc. v. Zheng*, No. CIV.A. 05-4477, 2006 WL 1373055, at *4-5 (D.N.J. May 17, 2006) (denying the plaintiff's request for expedited discovery in part because it "would lead to the parties conducting nearly all discovery in an expedited fashion under the premise of preparing

for a preliminary injunction hearing, which is not the purpose of expedited discovery.");

*Philadelphia Newspapers, Inc. v. Gannett Satellite Info. Network, Inc.*, No. CIV. A. 98-CV-2782, 1998 WL 404820, at *2-3 (E.D. Pa. July 15, 1998) (denying expedited discovery in part because the plaintiff's document requests were "wholly overbroad in scope."); *but see Par. of Jefferson v. S. Recovery Mgmt., Inc.*, No. CIV. A. 95-2290, 1995 WL 542475, at *2 (E.D. La. Sept. 12, 1995) (allowing limited discovery when the discovery sought was "limited to five requests for documents which defendants should routinely maintain and have readily accessible."). Therefore, the Court finds that the breadth of the discovery request and the burden of the request weigh in favor of the Court denying Plaintiff's request for expedited discovery.[3]

In regards to the third factor, Plaintiff argues that "[it] needs expedited discovery to prepare for the injunction hearing and determine the extent of [Defendants'] false advertising." (Dkt. #16 at p. 3). Defendants point out that "expedited discovery is not automatically granted merely because a party seeks a preliminary injunction." (Dkt. # 11 at p. 10 (citing *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009))). *See Bug Juice Brands, Inc.*, 2010 WL 1418032, at *2 (refusing request for expedited discovery and stating that "[a]lthough Plaintiffs have suggested the requested discovery items need to be preserved, Plaintiffs have not demonstrated or otherwise established that any of the requested information is at risk of destruction."); *Tracfone Wireless, Inc. v. King Trading, Inc.*, No. 3-08-CV-0398-B, 2008 WL 918243 at *1 (N.D. Tex. Mar. 13, 2008) (finding that expedited discovery was appropriate because "there [was] a legitimate concern for the continuing existence and maintenance of the integrity of the evidence in question absent an order preserving the evidence."); *GTFM Inc. v.*

---

[3] The Court is not is not stating that Plaintiff's expedited discovery request is not proper for regular discovery, which may commence after the Rule 26(f) attorney conference. The Order Governing Proceedings requires the attorneys to conference very soon, on or before July 25, 2016. After the conference, regular discovery may commence and this Memorandum Opinion and Order does not affect regular discovery.

*Int'l Basic Source, Inc.*, No. 01 CIV-6203, 2002 WL 42884, at \*2 (S.D.N.Y. Jan. 11, 2002)

(holding that expedited discovery was necessary for determining jurisdiction and venue because

"the facts necessary to establish personal jurisdiction and propriety of venue [are] exclusively

within the defendant's knowledge.").[4]   In the current case, there are no concerns about the

destruction of evidence, and the facts necessary to determine whether or not an injunction is

proper are not exclusively within Defendants' knowledge.[5]   Therefore, the Court finds that the

fourth factor is neutral.

The fifth factor considers how far in advance of the typical discovery process the request

was made.  Defendants maintain that this case is well in advance of the typical discovery process

and characterizes the case as still in its infancy (Dkt. #11 at p. 11).[6]   Plaintiff does not appear to

dispute that the discovery is early, and merely explains that "[it] seeks discovery now due to the

expedited nature of injunctive relief[,]" and states that "[Plaintiff] will answer similarly narrow

discovery requests on the same schedule[.]" (Dkt. #16 at p. 5).  Thus, the Court finds that the

fifth factor weighs in favor of the Court denying Plaintiff's request for limited expedited

---

[4] *Par. of Jefferson* is distinguishable because although the court allowed limited discovery, the discovery sought was "limited to five requests for documents which defendants should routinely maintain and have readily accessible." 1995 WL 542475, at \*2.  As explained above, the discovery sought in the current case is broad and is not narrowly tailored.  Therefore, the Court finds that *Par. of Jefferson* is not persuasive authority as to the third factor in this particular case.

[5] Defendants assert that the facts related to Plaintiff's claims "do not 'lie exclusively within the defendant's knowledge.'" (Dkt. #11 at p. 7).  Plaintiff argues that "[d]ue to the nature of medical device sales, Defendants' marketing materials are not public television ads or weekly circulars. What Defendants' sales representatives are telling doctors and what Defendants have instructed its sale's team to say is solely within Defendants' knowledge." (Dkt. #16 at p. 4 n.10).  However, Defendants were able to submit evidence of Plaintiff's advertising and marketing. *See* Dkt. # 11 at p. 15 (stating that "[e]ven without the benefit of discovery, [Defendants] [have] uncovered evidence of [Plaintiff] falsely representing that its AcceleDent Aura product is indicated for use with aligners – which it is not.").  Likewise, Plaintiff alleges that Defendants were advertising on public forums such as YouTube and on the website of related entities (Dkt. # 9 at ¶ 2).  Therefore, the Court finds that the facts necessary for Plaintiff to support its application for injunction are not exclusively within Defendants' control.

[6] Defendants also argue that the Court should not grant Plaintiff's expedited discovery request because "there is no protective order in place, which is particularly important to [Defendants] given the fact that [Plaintiff's] requests are aimed at restricting [Defendants'] ability to compete in the marketplace[,]" and Defendants are Plaintiff's only competitor (Dkt. #11 at p. 12).  However, the Court assumes that this issue has been resolved since Plaintiff later represented in its reply that it had sent Defendants a protective order. (Dkt. #16 at 5).

discovery.  Therefore, after weighing the five relevant factors, the Court finds that good cause

does not exist and Plaintiff's request for limited expedited discovery should be denied.[7]

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion for Expedited Discovery (Dkt. #9) is

hereby **DENIED**.

**SIGNED this 13th day of July, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[7] Defendants argue that Plaintiff's deposition requests are improper because they fail to comply with the Federal Rules of Civil Procedure (Dkt. #11 at pp. 12-13).  Defendants also assert that they do not have the requisite amount of control of the parties that Plaintiff individually names as witnesses (Dkt. #25 at p. 5). The Court finds that it is unnecessary to address these arguments because, as explained above, Plaintiff has not shown good cause and its request for expedited discovery is denied.