# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| ORTHOACCEL TECHNOLOGIES, INC. | § | |
| | § | |
| v. | § | Civil Action No. 4:16-CV-00350-ALM |
| | § | Judge Mazzant |
| PROPEL ORTHODONTICS, LLC | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff OrthoAccel Technologies, Inc.'s Partial Motion to Dismiss Defendant's Counterclaims, or in the Alternative for a More Definite Statement (Dkt. #159). The Court, having considered the relevant pleadings, finds the motion is denied.

### BACKGROUND

Plaintiff, OrthoAccel Technologies, Inc. ("OrthoAccel"), is a medical device company that manufactures dental appliances. In 2008, OrthoAccel developed a prototype hands-free dental device that uses gentle vibrations to accelerate tooth movement when used with orthodontic treatment. This prototype would eventually become the AcceleDent device, which has two main functional components: (1) a "Mouthpiece" and (2) an "Activator." The Activator is a small extraoral component that generates a vibrational force of 0.25N at 30 Hz. The Activator connects directly to the Mouthpiece, which the patient lightly bites down on for 20 minutes daily to accelerate tooth movement during orthodontic treatment.

On November 5, 2011, the Food and Drug Administration ("FDA") granted 510(k) clearance for AcceleDent as "an orthodontic accessory intended for use during orthodontic treatment. It is used in conjunction with orthodontic appliances such as braces and helps facilitate minor anterior tooth movement." A 510(k) is a premarketing submission made to the FDA to demonstrate that the device to be marketed is as safe and effective as a legally marketed device (a

"predicate device") that is not subject to premarket approval. 510(k) clearance is required for Class II devices, but Class I devices are 510(k) exempt. Class I devices are deemed to be low risk and are therefore subject to the least regulatory controls. For example, dental floss is classified as a Class I device. Class II devices are higher risk devices than Class I and require greater regulatory controls to provide reasonable assurance of the device's safety and effectiveness. Dental implants and braces are examples of Class II devices.

In 2012, OrthoAccel launched its Class II AcceleDent device in the United States to be used in conjunction with orthodontic treatment. In 2013, OrthoAccel launched the AcceleDent Aura ("Aura"), the second generation of AcceleDent, which initially was cleared to be used with braces only. OrthoAccel offers its customers special pricing through its AcceleDent NOW Program, which Propel alleges contains anticompetitive vertical pricing constraints and other exclusionary requirements.

Defendant Propel Orthodontics, LLC ("Propel") is also a medical device company that manufactures dental appliances. In January 2016, Propel began marketing a vibratory Class I device designed to help seat clear aligners. Orthodontic patients wear a series of these removable aligners, marketed under names such as Invisalign and ClearCorrect, to gradually straighten their teeth. In March 2016, Propel released the VPro5, which operates at 120 Hz and requires five minutes of daily use to properly seat (i.e., fit better on the teeth) clear aligners. The VPro5 costs significantly less than the OrthoAccel Aura. On July 8, 2016, OrthoAccel's product—the Aura—was cleared for use with clear aligners.

Propel primarily markets the VPro5 through its sales force in a consultative setting. Propel sales representatives promote the VPro5 by telling orthodontists that the device offers several clinical benefits ("5 Clinical Benefits"). These 5 Clinical Benefits include: (1) more efficient

aligner seating, (2) relieves orthodontic pain, (3) accelerates tooth movement, (4) fast tracks retention, and (5) stimulates bone growth and remodeling. Propel's sales force markets the VPro5 as a quicker, cheaper alternative to the AcceleDent device.

In May 2016, OrthoAccel sued Propel, claiming Propel falsely advertised the VPro5's 5 Clinical Benefits in violation of the Lanham Act. On October 3, 2016, Propel filed its counterclaims against OrthoAccel (Dkt. #118). On October 26, 2016, the Court entered a preliminary injunction enjoining Propel from advertising the 5 Clinical Benefits (Dkt. #148). On November 7, 2016, OrthoAccel filed its Partial Motion to Dismiss Defendant's Counterclaims or in the Alternative for a More Definite Statement (Dkt. #159). On November 25, 2016, Propel filed its response (Dkt. #172). On December 5, 2016, OrthoAccel filed a reply (Dkt. #212). On December 12, 2016, Propel filed a sur-reply (Dkt. #245). On December 16, 2016, OrthoAccel filed a notice of new supplemental authority (Dkt. #250). On December 23, 2016, Propel filed a response to the supplemental authority (Dkt. #255).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the

complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

4

# ANALYSIS

Propel alleges OrthoAccel violated the Sherman and Clayton Acts while marketing and selling its accelerated vibratory orthodontic devices. Propel further alleges OrthoAccel violated the Lanham Act by promoting and advertising its AcceleDent products and misrepresenting Propel's VPro5 products. Finally, Propel alleges product disparagement, business defamation, tortious interference with prospective contractual or business relations, tortious interference with existing contract, and unfair competition. OrthoAccel's partial motion to dismiss asks the Court to dismiss the antitrust claims because Propel failed to plead a relevant market, and the tortious interference with existing contract claim because Propel failed to plead specific contracts that were the subject of the alleged interference. The Court will address these requests in turn.

### A. Violations of the Sherman Act and the Clayton Act

Propel alleges that OrthoAccel had monopoly power over the nationwide market for accelerated vibratory orthodontic devices. Propel alleges that OrthoAccel has maintained its dominant market power and foreclosed fair competition as a result of exclusionary conduct, price controlling, and anticompetitive conduct. Specifically, Propel contends that OrthoAccel has engaged in exclusive dealing through its AcceleDent NOW Program that violates Sections 1 and 2 of the Sherman Act and Section 3 of the Clayton Act.

In its partial motion to dismiss, OrthoAccel claims Propel fails to plead a relevant product market for the alleged antitrust violations. Additionally, OrthoAccel alleges Propel does not plead—as a result of the conduct alleged—consumers will be unable to obtain viable economic substitutes to shorten the time necessary for their orthodontic treatment or reduce pain at competitive prices from sources other than OrthoAccel. Finally, OrthoAccel claims the AcceleDent NOW contract is not an "exclusive" contract and does not violate antitrust law.

"As a prerequisite to any antitrust claim, plaintiff must allege a relevant market in which the anticompetitive effects of the challenged activity can be assessed." *Lone Star Milk Producers, Inc. v. Dairy Farmers of Am., Inc.*, 5:00-CV-191, 2001 WL 1701532, at *5 (E.D. Tex. Jan. 22, 2001). The definition of a relevant market is a "function of the relevant product market and the relevant geographic market." *Wampler v. S.W. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010). OrthoAccel only contests the product market, which Propel alleges is "the nationwide accelerated vibratory orthodontic device market" (Dkt. #118 at ¶ 33). The Fifth Circuit requires plaintiff to plead a relevant product market in precise economic terms:

> Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient, and a motion to dismiss may be granted.

*Apani Sw., Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 628 (5th Cir. 2002). OrthoAccel alleges that the products are not interchangeable and that Propel fails to plead any facts regarding the cross-elasticity of demand. But Propel's counterclaims allege facts, which the Court must accept as true, that plausibly show the VPro5 is reasonably interchangeable with the AcceleDent device. The Court recognizes that the products are not perfectly fungible, but the test is reasonable interchangeability. *See United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 394 (1956). Both products use vibration to shorten the time for orthodontic treatment and reduce pain, and both products claim to work with clear aligners. The Court finds that based on the pleadings, the products are reasonably interchangeable because interchangeability merely "implies that one product is roughly equivalent to another for the use to which it is put." *Vaughn Med. Equip. Repair Serv., LLC v. Jordan Reses Sply. Co.*, C.A. No. 10-00124, 2010 WL 3488244, at *19 (quotation and citation omitted).

OrthoAccel contends Propel failed to define the product market with the necessary "cross-elasticity of demand" or other indications of price sensitivity. "The cross-elasticity of demand for substitutes measures consumers' propensity to switch from one product to another, similar product when relative prices change." *United Farmers Agents Ass'n v. Farmers Ins. Exchange*, 89 F.3d 233, 236 n.3 (5th Cir. 1996). Propel's counterclaims allege that OrthoAccel had control over nearly 100% of the accelerated vibratory orthodontic device market before Propel launched the VPro5 in the spring of 2016. OrthoAccel began losing market share when the cheaper VPro5 entered the marketplace, which shows that the product market is plausibly price sensitive. While it is difficult to assess cross-elasticity of demand for nascent products in a relatively new market, the Court finds that Propel has pleaded a set of facts that plausibly defines the relevant product market.[1]

Propel claims OrthoAccel's AcceleDent NOW Program is an "exclusive" contract that violates the Sherman and Clayton Acts. Exclusive dealing occurs when "a seller agrees to sell its output of a commodity to a particular buyer, or when a buyer agrees to purchase its requirements of a commodity exclusively from a particular seller." *Apani Sw., Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 625 (5th Cir. 2002) (citing William C. Holmes, Antitrust Law Handbook § 4.02[3] (1999)). And an exclusive-dealing arrangement does not violate the Clayton Act unless the probable effect of the agreement is that it "will foreclose competition in a substantial share of the line of commerce affected." *Bob Maxfield, Inc. v. Am. Motors Corp.*, 637 F.2d 1033, 1036 (5th Cir.1981) (citing *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961)). To survive this motion to dismiss, Propel must allege facts that plausibly show the "exclusive" agreement foreclosed competition and the "competition foreclosed by the

---

[1] OrthoAccel's argument that Propel's pleading overlooked interchangeable substitute products—such as orthodontic surgery and salt water rinses—is unavailing. The law does not require Propel to plead an infinite range of possible substitutes and there is no evidence before the Court to suggest that surgery or salt water is a substitute product to an accelerated vibratory orthodontic device. *See Du Pont*, 351 U.S. at 394.

arrangement constitutes a 'substantial share of the relevant market . . . That is, the opportunities for other traders to enter into or remain in that market must be significantly limited." *Apani*, 300 F.3d at 625 (citations and quotations omitted).

Propel alleges that the AcceleDent NOW Program requires providers to "purchase all, or nearly all, of its requirements for accelerated vibratory orthodontic devices from OrthoAccel" and it "precludes Providers from buying any products from OrthoAccel's competitors, such as Propel" (Dkt. #118 ¶ 18, ¶ 19). The Court finds it plausible that the AcceleDent Now Program's reordering and enrollment requirements could effectively preclude competition. *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 282 (3d Cir. 2012) (explaining "express exclusivity requirement is not necessary because de facto exclusive dealing may be unlawful").[2] Further, as discussed above, the program could plausibly foreclose a substantial share of the relevant market because of OrthoAccel's dominance in the nascent market. For purposes of this motion to dismiss, Propel has pleaded facts that plausibly support an exclusionary contracting claim.

### B. Retractable Technologies

On December 2, 2016, the Fifth Circuit issued an opinion relevant to Propel's counterclaims. *See Retractable Technologies, Inc. v. Becton Dickinson & Co.*, 842 F.3d 883 (5th Cir. 2016). In *Retractable Technologies*, the Fifth Circuit discussed whether a false advertising allegation could support a Sherman Act claim. OrthoAccel contends that *Retractable Technologies* confirms its principal argument that "[f]alse advertising is not a proper foundation for antitrust claims, . . ." (Dkt. #250). This contention is inaccurate. The Fifth Circuit merely found that "false advertising is a slim, and here nonexistent, reed for a § 2 claim." *Id.* at 888–89. The Fifth Circuit

---

[2] The Court reserves its judgment as to whether the AcceleDent NOW Program is truly an exclusive-dealing arrangement. Discovery may or may not reveal that the AcceleDent NOW Program is a de facto exclusionary contract. *See ZF Meritor*, 696 F.3d at 282. The Court did not consider the AcceleDent NOW contract attached to the partial motion to dismiss because the parties contest whether it is a complete copy or actually executed version.

8

did not adopt the Seventh Circuit's position and hold that false advertising may not serve as a basis for Sherman Act claims. Rather, it confirmed existing Fifth Circuit antitrust precedent, allowing antitrust lawsuits based on false advertisements that have the potential to eliminate competition. *See id.* at 895 (citing *Phototron Corp. v. Eastman Kodak Co.*, 842 F.2d 95, 100 (5th Cir. 1988)) ("Advertising that creates barriers to entry in a market constitutes predatory behavior of the type the antitrust laws are designed to prevent.") Further, the alleged holding is irrelevant for the purposes of this motion to dismiss. Here, OrthoAccel moved to dismiss based on Propel's alleged failure to plead a relevant market and exclusive contract. The Court finds that while the *Retractable Technologies* decision might affect later decisions in this case, it does not support granting this motion to dismiss as OrthoAccel contends.

## C. Tortious Interference

Propel alleges tortious interference with an existing contract. The elements of tortious interference with an existing contract are: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). OrthoAccel claims that Propel's pleading is deficient because it does not identify an existing contract. OrthoAccel offers the *Stelly* case, where a court dismissed a tortious interference claim because plaintiff only broadly alleged it had "valid contracts with certain customers" but failed "entirely to allege or designate a specific contract that is the subject of interference." *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 774 (S.D. Tex. 2010). OrthoAccel claims Propel's counterclaim is similarly deficient because it only alleges Propel had "existing contracts with customers for the purchase of Propel's VPro5." Propel counters with a more recent case from the same court distinguishing *Stelly*. *See Wolf v. Cowgirl Tuff Co.*, No. 1:15-

9

CV-1195 RP, 2016 WL 4597638, at *3 (W.D. Tex. Sept. 2, 2016) (holding that while "[p]laintiffs have not described the supposed contracts in detail . . . the facts alleged are enough from which to reasonably infer the existence of contracts subject to interference."). Propel alleges that OrthoAccel interfered with existing contracts by sending cease and desist letters to Propel customers, which reasonably infers that OrthoAccel knew of Propel's existing contracts. *See Exxon Corp. v. Allsup*, 808 S.W.2d 648, 656 (Tex. App.—Corpus Christi 1991, writ denied) (knowledge may be shown as actual knowledge or "knowledge of such facts and circumstances that would lead a reasonable person to believe in the existence of the contract"). The Court agrees and finds that Propel has alleged facts to plausibly support a tortious interference claim.

## CONCLUSION

After reviewing Propel's counterclaims, OrthoAccel's partial motion to dismiss, and the responsive pleadings, the Court finds that Propel has stated plausible claims for purposes of defeating a Rule 12(b)(6) motion.

It is therefore **ORDERED** that Plaintiff OrthoAccel Technologies, Inc.'s Partial Motion to Dismiss Defendant's Counterclaims, or in the Alternative for a More Definite Statement (Dkt. #159) is hereby **DENIED**.

**SIGNED** this 3rd day of April, 2017.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE